# EXHIBIT 1

## SETTLEMENT AGREEMENT

**WHEREAS,** Suncoast Waterkeeper ("Waterkeeper") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of Florida, with its main office in Sarasota, Florida;

**WHEREAS,** Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of the Sarasota, Florida area from all sources of pollution and degradation;

**WHEREAS**, Suncoast Metals, LLC operates industrial facilities located at 2050 51st Street, Sarasota, Florida 34234 (the "2050 Facility"), and 2060 51st Street, Sarasota, Florida 34234 (the "2060 Facility") (collectively "Combined Facility"), and the Combined Facility is owned by Paradise Properties of Longboat Key LLC, located at 2050 51st Street, Sarasota, FL 34234, collectively ("Suncoast Metals");

**WHEREAS**, the Combined Facility's industrial activities, which include assembling, breaking up, sorting, and wholesale distribution of scrap and waste materials, are categorized under Standard Industrial Classification Code ("SIC") Code 5093;

**WHEREAS**, stormwater discharges to Waters of the United States associated with industrial activity at the Combined Facility are regulated by the State of Florida's Multi-Sector Generic Permit for Stormwater Discharge Associated with Industrial Activity ("MSGP") and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Suncoast Metals' operations at the Combined Facility may result in discharges of pollutants into waters of the United States that would be regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on July 31, 2020, Waterkeeper issued a Notice of Intent to File Suit ("2050 Facility 60-Day Notice") to Suncoast Metals, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region IV, the U.S. Attorney General, the Secretary of the Florida Department of Environmental Protection ("DEP"), and the Director of the Southwest District of the DEP, alleging violations of the Clean Water Act and the MSGP, at the 2050 Facility;

**WHEREAS,** on November 12, 2020, Waterkeeper issued a Notice of Intent to File Suit ("2060 Facility 60-Day Notice") to Suncoast Metals, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region IV, the U.S. Attorney General, the Secretary of the Florida Department of Environmental Protection ("DEP"), and the Director of the Southwest District of the DEP, alleging violations of the Clean Water Act and the MSGP, at the 2060 Facility;

**WHEREAS**, Waterkeeper's Complaint alleged violations of the MSGP and CWA for Suncoast Metals' alleged discharges of pollutants into surface waters, including Sarasota Bay and Whitaker Bayou ("Receiving Waters");

**WHEREAS,** Suncoast Metals denies all allegations set forth in the 2050 Facility 60-Day Notice Letter and 2060 Facility 60-Day Notice Letter (collectively "60-Day Notice Letters");

SETTLEMENT AGREEMENT

WHEREAS, Waterkeeper and Suncoast Metals (collectively "Settling Parties" or "Parties" and individually "Settling Party" or "Party") agree that it is in their mutual interest to enter into a Settlement Agreement setting forth terms and conditions appropriate to resolve the allegations set forth in the 60-Day Notice Letters and Complaint without further proceedings and without Suncoast Metals admitting any liability; and

WHEREAS, all actions taken by the Suncoast Metals pursuant to this Settlement Agreement shall be made in compliance with all applicable federal, state and local rules and regulations.

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES:

**I.      Objectives**

1.      It is the express purpose of the Settling Parties through this Settlement Agreement to further the objectives of the Clean Water Act, and to resolve all issues alleged by Waterkeeper in its 60-Day Notice.

2.      In light of these objectives and as set forth fully below, Suncoast Metals agree to comply with the provisions of this Settlement Agreement.

**II.     Effective Date and Term of Settlement Agreement**

3.      <u>Effective Date</u>. The Effective Date of this Settlement Agreement shall be on the latest date indicated below as the date the Settlement Agreement was executed by the last party.

4.      <u>Term & Termination</u>. This Settlement Agreement shall terminate in accordance with paragraph 4 unless one of the Settling Parties has invoked Dispute Resolution in accordance with Section IV of this Settlement Agreement, in which case the Settlement

SETTLEMENT AGREEMENT

Agreement will terminate within the earlier of fifteen (15) days of notice by the Settling Parties that invoked Dispute Resolution that the dispute has been fully resolved or an order of the Court resolving the dispute and terminating the Settlement Agreement.

5. Subject to paragraph 28-30, the Settlement Agreement shall terminate upon the date of the first of the following events to occur (such date shall be referred to as the "Termination Date"):

a. During the term of this Settlement Agreement, all monitoring data for four consecutive sampling events taken at an industrial discharge monitoring point identified in the SWPPP during a Qualifying Storm Event ("QSE"), including the first QSE of a rain season, as defined in the MSGP, are below the benchmarks described in Paragraph 15, below; or

b. Eighteen months after the Effective Date of this Settlement Agreement.

Suncoast Metals shall notify Waterkeeper thirty (30) days prior to claiming termination under subparagraph 4. In the absence of any ongoing, unresolved dispute, this Settlement Agreement shall terminate on the Termination Date.

## III. COMMITMENTS OF THE SETTLING PARTIES

### Storm Water Pollution Control Best Management Practices

6. <u>Revised Storm Water Pollution Prevention Plan ("SWPPP")</u>: Suncoast Metals shall amend their SWPPP to include the following BMP's and other requirements of this Settlement Agreement not already in the SWPPP.

### Best Management Practices

7. Sweeping will occur 4-5 days per week, using a mechanical sweeper.

8.      Materials stored onsite with high potential to result in the runoff of contaminants will be kept under cover. An operational policy will be implemented and maintained to remove large piles of materials such as condenser units off-site as soon as such material amounts to a single truckload full.

9.      Waste materials around the site will be timely and appropriately removed and disposed of pursuant to the SWPPP. Suncoast Metals will continue to expand the curbing around the perimeter of the Facility to retain stormwater onsite and only allow discharge from designated outfalls. Suncoast Metals will ensure water is not discharging through the southwest corner of the connector "alley" between the 2050 and 2060 properties.

10.     Evaluate, and, if feasible, implement on-site infiltration for stormwater in the area of the existing on-site railroad easement. Repair sump pump on the south end of the property to avoid ponding.

11.     Replace all filter socks on site as needed with Pig Heavy Metal Filtration Catch Basin Inserts.

12.     Will explore use, if feasible, of as much of the Railroad easement as possible for infiltration or retention of stormwater.

13.     Replace filter under all inlet grates as necessary with Pig Heavy Metal catch basin insert system, a filter designed to remove metals from drainage.

### Sampling at the Combined Facility

14.     <u>Training, Sampling, and Reporting</u>:  Suncoast Metals shall sample, report, monitor, and train its employees with respect to water discharges in accordance with the requirements of the MSGP and its SWPPP.  Suncoast Metals shall collect samples from four

SETTLEMENT AGREEMENT

(4) QSEs prior to September 1 of each year. Suncoast Metals shall provide complete laboratory results of MSGP and SWPPP sampling collected at the Combined Facility to Waterkeeper within thirty (30) days of obtaining final results for each sampling event.

<b>Reduction of Pollutants in Discharges</b>

15.    <u>Action Plan</u>:  During the Term of this Settlement Agreement, if the average of any parameter from four (4) storm water samples from the Facility in any year exceeds any "benchmark" developed under the MSGP, Suncoast Metals shall develop an Action Plan proposing measures to achieve compliance with the MSGP benchmark(s), and a schedule for implementing any additional management practices that may be necessary. If an action plan is required, Suncoast Metals shall prepare and submit to Waterkeeper a draft of the action plan for the Combined Facility by October 1 of the year in which the requirement for an action plan is triggered.

a.    Waterkeeper shall have twenty-one (21) days upon receipt of Suncoast Metals' action plan to provide Suncoast Metals with comments. Within twenty-one (21) days of receiving Waterkeeper's proposed revisions to an action plan, Suncoast Metals shall consider each of Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated.  Action plan(s) developed and implemented pursuant to this Settlement Agreement are an obligation of this Settlement Agreement.  Any disputes as to the adequacy of the action plan shall be resolved pursuant to the dispute resolution provisions of this Settlement Agreement, set out in Paragraphs 28-30 below.

b.    <u>Action Plan Payments</u>:  Should an action plan be required, Suncoast Metals shall pay two thousand dollars ($2,000) for each action plan, to offset Waterkeeper's

review.  Payment shall be made to "Suncoast Waterkeeper" addressed to: P.O. Box 1028, Sarasota, FL 34230. Failure to make this payment within 30 days of receipt of a written invoice, from Suncoast Waterkeeper and request payment will constitute a breach of the Settlement Agreement.

<strong>Visual Observations</strong>

16.     <u>Storm Water Discharge Observations</u>:   During the life of this Settlement Agreement, Suncoast Metals shall conduct visual observations during the Combined Facility's operating hours during every QSE that produces a discharge at all locations where storm water with exposure to industrial activities or material is discharged from the Combined Facility.

17.     <u>Non-Storm Water Discharge Observations</u>:   During the life of this Settlement Agreement, Suncoast Metals shall conduct monthly visual observations at the Combined Facility to document for any non-storm water discharges.

18.     <u>Visual Observations Records</u>:   Suncoast Metals shall maintain observation records to document compliance with Paragraphs 16 and 17 during the term of this Agreement and shall provide Waterkeeper with a copy of those records within thirty (30) days of receipt of a written request from Waterkeeper for those records.

19.     <u>Employee Training Program</u>:  Within forty-five (45) days of the Effective Date, Suncoast Metals shall implement the employee training plan as set forth in the MSGP and SWPPP.

20.     <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Suncoast Metals shall provide a translator or translators at all trainings where such translation is likely to improve

SETTLEMENT AGREEMENT

staff comprehension of the Training Program and improve compliance with this Settlement Agreement and the MSGP.

a.   Training shall be provided by a Suncoast Metals employee or consultant familiar with the requirements of this Settlement Agreement and the MSGP, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Settlement Agreement, the MSGP, and the Combined Facility's SWPPP.  All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP.

c.   <u>Visual Observation Training</u>:  Suncoast Metals shall provide training on how and when to properly conduct visual observations to employees designated with this task;

d.   <u>Non-Storm Water Discharge Training</u>:  Suncoast Metals shall train all employees designated to achieve compliance with the MSGP and this Settlement Agreement ("Designated Employees") at the Combined Facility on the MSGP's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

e.   <u>Employees</u>:   All Designated Employees at the Combined Facility shall participate in the Training Program annually.  New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

f.   The Suncoast Metals shall maintain training records during the life of this Agreement to document compliance with Paragraphs 19-20, and shall provide Waterkeeper with a copy of these records within thirty (30) days of receipt of a written request.

g.   Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP:  Within thirty (30) days of the effective date, Suncoast Metals shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

**Compliance Monitoring and Reporting**

21.     Every year during the term of this Settlement Agreement, Waterkeeper may conduct one site inspection ("Site Inspection") for the purpose of ensuring compliance with this Settlement Agreement and the MSGP. No more than two representatives of Waterkeeper may participate in the Site Inspection. In the event of a dispute regarding Suncoast Metals' compliance with this Settlement Agreement, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection during the term of the Settlement Agreement at Waterkeeper's request. Waterkeeper shall not unreasonably request, and Suncoast Metals shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and Waterkeeper will provide Suncoast Metals with as much notice as possible—but at least seventy-two (72) hours' notice prior to the Site Inspection, if no attorney is involved and one week if an attorney is involved, in anticipation of wet weather, and one week notice during dry weather. For any Site Inspection requested to occur in wet weather, Waterkeeper shall be entitled to adjust timing or reschedule during normal business hours (Monday through Friday, 8:00 a.m. to 5:00 p.m.) in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Combined Facility in wet weather. Notice will be provided by telephone and electronic mail. During the Wet Weather inspection,

SETTLEMENT AGREEMENT

Waterkeeper may request that Suncoast Metals collect a sample of industrial storm water discharge from the Combined Facility's designated industrial discharge point(s) referenced in its SWPPP, consistent with the monitoring plan in the SWPPP, to the extent that such discharges are occurring.  Suncoast Metals shall collect the sample and provide a split sample to Waterkeeper.   Waterkeeper's representative(s) may observe the split sample(s) being collected by Suncoast Metals' representative. Waterkeeper agrees that all individuals who will participate will abide by all of Suncoast Metals' safety rules, and will not enter any buildings at the Combined Facility without Suncoast Metals' express permission.

22.    <u>Document Provision</u>. During the term of this Settlement Agreement, Suncoast Metals shall notify and submit documents to Waterkeeper as follows:

a.    Suncoast Metals shall copy Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Combined Facility that are submitted to the Florida Department of Environmental Protection.,

b.    Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Combined Facility received by Suncoast Metals from the Florida Department of Environmental Protection shall be sent to Waterkeeper within five (5) business days of receipt by Suncoast Metals.  Suncoast Metals shall mail paper copies or email electronic copies of documents to Waterkeeper at the relevant notice address contained below.

23.    <u>Compliance Monitoring</u>. Suncoast Metals agrees to partially defray costs associated with Waterkeeper's monitoring of Suncoast Metals' compliance with this

Settlement Agreement by a one- time payment to Waterkeeper in the amount of four thousand dollars ($4,000). The payment shall be made payable to Suncoast Waterkeeper, P.O. Box 1028, Sarasota, FL 34230, within thirty (30) days of the receipt of a written invoice from Waterkeeper. Failure to submit payment as required under this paragraph will constitute breach of the Settlement Agreement.

**Environmental Mitigation, Litigation Fees and Costs, Stipulated Penalties, and Interest**

24.     Environmental Mitigation Project:   To remediate the alleged environmental harms resulting from allegations in the Complaint, Suncoast Metals agrees to make a payment of $ 10,000 to the Sarasota Bay Estuary Program, for work related to the improvement of the water quality and/or ecosystems of the Sarasota Bay Estuary. The payment shall be made within thirty (30) days of receipt of an invoice for this Payment.  Suncoast Metals shall provide Waterkeeper with a copy of such payment.

25.     Waterkeeper's Fees and Costs: Suncoast Metals agrees to pay a total of $37,500 to Waterkeeper to partially reimburse Waterkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment in full shall be made within thirty (30) days of the Effective Date and delivered by certified mail or overnight delivery made payable to: Suncoast Waterkeeper, P.O. Box 1028, Sarasota, FL 34230.

26.     Suncoast Metals shall make a remediation payment of eight hundred dollars ($800) for each missed deadline included in this Settlement Agreement that is not otherwise

excused by Waterkeeper in writing, unless an extension of that particular deadline was previously agreed to or the deadline was missed due to force majeure. Payments for missed deadlines shall be made to the Sarasota Bay Estuary Program. Suncoast Metals agrees to make the stipulated payment within thirty (30) days of receipt of written notice from Waterkeeper of a missed deadline or failure to sample together with an invoice for the requested payment. Suncoast Metals shall provide Waterkeeper with a copy of each such payment at the time it is made.

27.     <u>Interest on Late Payments</u>:  Suncoast Metals shall pay interest on any payments, fees, or costs owed to Waterkeeper under this Settlement Agreement that Waterkeeper has not received by the due date. The interest shall accrue starting the first day after the payment is due and shall be computed at a rate of 1.25% per month (15% per year), unless Dispute Resolution has been invoked by Suncoast Metals, in which case interest shall not start to accrue until the conclusion of Dispute Resolution. Interest on late payments shall be made payable to Waterkeeper and sent to the address listed in paragraph 48, below.

**Dispute Resolution**

28.     <u>Meet and Confer</u>. Either Party to this Settlement Agreement may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

29.     <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 28, the Parties agree that this matter, including the dispute, may be submitted to binding mediation before an experienced mediator agreed to by the Parties. Binding mediation shall mean that if mediation does not result in a settlement of the dispute the mediator shall be empowered to make a written recommendation of the method for resolution of the dispute. If the Parties cannot agree to a mediator within thirty (30) days of the request for binding mediation, or if the Parties do not settle the dispute through binding mediation than either party may seek formal resolution by filing a complaint and/or motion before the United States District Court for the Middle District of Florida. The Parties hereby consent that any such dispute can be heard by the District Magistrate Judge. The recommendation of the mediator will be admissible evidence in any such action before the District Court.

30.     In resolving any dispute arising from this Settlement Agreement before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

**Mutual Release of Liability and Covenant Not to Sue**

31.     <u>Waterkeeper's Release</u>. Upon the Effective Date of this Settlement Agreement, and, except as provided by the Dispute Resolution provisions, above, Waterkeeper on its own behalf and on behalf of its respective current and former officers, directors, members, employees, predecessors, successors, assigns, agents, attorneys, and other representatives release all persons including, without limitation, Suncoast Metals and each of their current and

SETTLEMENT AGREEMENT

former officers, directors, employees, shareholders, parents, affiliates, agents, attorneys, consultants, representatives, predecessors, successors, and assigns, and each of their officers, directors, members, employees, shareholders, parents, affiliates, agents, attorneys, consultants, and other representatives, past and present, from, and waive, any and all claims under the Clean Water Act, related to the Notice Letters, or arising from or pertaining to this action, including all claims for injunctive relief, penalties, fees (including without limitation fees of attorneys, experts, and others), liabilities, costs, expenses or any other sum incurred or claimed, occurring or arising up to and including the Termination Date.

32.     <u>Suncoast Metals' Release</u>. Upon the Effective Date of this Settlement Agreement, and, except as provided by Dispute Resolution provisions, above, Suncoast Metals, on their own behalf and on behalf of their current and former officers, directors, members, employees, shareholders, parents, affiliates, agents, attorneys, consultants, and other representatives, past and present, from, and waive, any and all claims under the Clean Water Act, related to the Notice Letters, or arising from or pertaining to this action, including all claims for injunctive relief, penalties, fees (including without limitation fees of attorneys, experts, and others), liabilities, costs, expenses or any other sum incurred or claimed, occurring or arising up to and including the Termination Date.

33.     <u>Covenant Not to Sue</u>. For the period beginning on the Effective Date and ending on the Termination Date, except as provided in the Dispute Resolution provisions, above, Waterkeeper agrees that neither it, nor its current or former officers, directors, employees, members, successors, assigns, agents, attorneys and/or other representatives, or any of them, will file any lawsuit against Suncoast Metals relating in any way to the claims and allegations

of the 60-Day Notice Letters, and/or the maters addressed by this Settlement Agreement, excepting only an action to enforce this Settlement Agreement.

**Miscellaneous Provisions**

34.     No Admission of Liability. The Parties enter into this Settlement Agreement for the purpose of avoiding prolonged and costly litigation. Neither the Settlement Agreement nor any payment pursuant to the Settlement Agreement shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Suncoast Metals maintain and reserve all defenses it may have to any alleged violations that may be raised in the future.

35.     Counterparts. This Settlement Agreement may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Settlement Agreement.

36.     Authority. The undersigned representatives for Waterkeeper and Suncoast Metals each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Settlement Agreement. A Party's signature to this Settlement Agreement transmitted by facsimile or electronic mail shall be deemed binding.

37.     Construction. The language in all parts of this Settlement Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Settlement Agreement are for reference only and shall not affect the construction of this Settlement Agreement.

38.     <u>Full Settlement</u>. This Settlement Agreement constitutes a full and final settlement of this matter.

39.     <u>Integration Clause</u>. This is an integrated Settlement Agreement. This Settlement Agreement is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Settlement Agreement.

40.     <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Settlement Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

41.     <u>Choice of Law</u>. The laws of the United States shall govern this Settlement Agreement.

42.     <u>Diligence</u>: Suncoast Metals shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

43.     <u>Effect of Settlement Agreement</u>: Compliance with this Settlement Agreement does not mean that Suncoast Metals is complying with the MSGP, the Clean Water Act, or any other law, rule, or regulation nor does non-compliance mean that Suncoast Metals is not complying with the MSGP, the Clean Water Act, or any other law, rule, or regulation.

44.     <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Settlement Agreement, and agree that it shall not be construed against the Party preparing it, but shall be

SETTLEMENT AGREEMENT

construed as if the Settling Parties jointly prepared this Settlement Agreement, and any uncertainty and ambiguity shall not be interpreted against any one Party.

45.     Modification of the Settlement Agreement. This Settlement Agreement, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

46.     Assignment. Subject only to the express restrictions contained in this Settlement Agreement, all of the rights, duties and obligations contained in this Settlement Agreement shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Suncoast Metals shall notify Waterkeeper within ten (10) days of any assignment.

47.     Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Settlement Agreement when performance is prevented or delayed due to a Force Majeure Event. For purposes of this Settlement Agreement, a "Force Majeure Event" is any circumstance beyond the control of a Settling Party's, their contractors or any entity controlled by a Settling Party, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure Event shall not include normal inclement weather, financial, inability to pay, or employee negligence. Suncoast Metals shall provide notice to Waterkeeper orally or by electronic or facsimile transmission as soon as practicable, but not later than ten (10) days after the time Suncoast Metals first knew of, or by the exercise of due diligence, should have known of, a claimed

Force Majeure Event. The notice shall describe the event and the length of any extension sought.  If the Waterkeeper agrees that a Force Majeure Event, as defined by this Section, has occurred, the Waterkeeper shall agree to extend the time for Suncoast Metals to perform the affected requirements for the time necessary to complete those obligations. Failures resulting from a Force Majeure Event shall not be considered a breach of this Settlement Agreement, and Suncoast Metals shall not be liable for any stipulated penalties occurring as a direct result of the Force Majeure Event, provided Suncoast Metals comply with the terms of this Paragraph.  If the Waterkeeper does not agree that a Force Majeure Event, as defined by this Paragraph, has occurred, or does not agree to the length of the extension of time sought by Suncoast Metals, the Waterkeeper's position shall be binding, unless Suncoast Metals invoke Dispute Resolution under Paragraphs 28-30 of this Settlement Agreement. In any such dispute, Suncoast Metals bear the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a Force Majeure Event, that Suncoast Metals gave the notice required by this Paragraph, that the Force Majeure Event caused any failure to comply or delay in compliance with an obligation of this Settlement Agreement that Suncoast Metals claim was attributable to that event, and that Suncoast Metals exercised reasonable efforts to prevent or minimize any failure or delay in compliance caused by the event.

48. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Settlement Agreement shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>If to Waterkeeper</u>

SETTLEMENT AGREEMENT

Jason Flanders (CA Bar No. 238007)

AQUA TERRA AERIS LAW GROUP LLP

4030 Martin Luther King Jr. Way

Oakland, CA 94609

Phone: (916) 202-3018

Email: jrf@atalawgroup.com

*With copies to*

Justin Bloom (FL Bar No. 89109)

SUNCOAST WATERKEEPER

P.O. Box 1028

Sarasota, FL 34230

Phone: (941) 275-2922

Email: bloomesq1@gmail.com

If to Suncoast Metals

Dan Fangmeyer

Suncoast Metals, LLC

95 52nd Street

Holmes Beach, FL 34217

Email: dfangmeyer@comcast.net

___

*With copies to*

Kevin S. Hennessy

100 Second Ave. South, Suite 501-S

St. Petersburg, FL 33701

Phone: (727) 245-0820

Email: khennessy@llw-law.com

_____

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

IN WITNESS WHEREOF, the undersigned have executed this Settlement Agreement as of the date first set forth below.

SUNCOAST WATERKEEPER

Date:  April 20, 2021

By:_____

Joseph McClash, Board Chair, Suncoast Waterkeeper

SUNCOAST METALS, LLC.

Date: _____, 2021

By:_____

 Suncoast Metals, LLC

SETTLEMENT AGREEMENT

PARADISE PROPERTIES OF LONGBOAT KEY, LLC

Date: _____, 2021

By: _____

Paradise Properties of Longboat Key, LLC

Approved as to form:

AQUA TERRA AERIS LAW GROUP LLP

Date: _____ April 19 _____, 2021

By: _____

Aqua Terra Aeris Law Group LLP

SETTLEMENT AGREEMENT

100 Second Ave. South, Suite 501-S

St. Petersburg, FL 33701

Phone: (727) 245-0820

Email: khennessy@llw-law.com

_____

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

IN WITNESS WHEREOF, the undersigned have executed this Settlement Agreement as of the date first set forth below.

SUNCOAST WATERKEEPER

Date: _____, 2021

By:_____

Suncoast Waterkeeper

SUNCOAST METALS, LLC.

Date: _A_P_R_I_L__2_0_____, 2021

By: _Daniel C. Hangmeyer_____

Suncoast Metals, LLC

SETTLEMENT AGREEMENT

PARADISE PROPERTIES OF LONGBOAT KEY, LLC

Date: _____APRIL 20_____, 2021


By: _____

Paradise Properties of Longboat Key, LLC


Approved as to form:

AQUA TERRA AERIS LAW GROUP LLP

Date: _____April 19_____, 2021

By: _____

Aqua Terra Aeris Law Group LLP

SETTLEMENT AGREEMENT

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

SUNCOAST WATERKEEPER,

                    Plaintiff,

                    v.

SUNCOAST METALS, LLC and
PARADISE PROPERTIES OF
LONGBOAT KEY, LLC,

                    Defendants.

Civil Case No.: 8:21-cv-00144

## SETTLEMENT AGREEMENT ADDENDUM

**WHEREAS,** on April 20, 2021, Plaintiff Suncoast Waterkeeper ("Waterkeeper") and Defendants Suncoast Metals, LLC and Paradise Properties of Longboat Key, LLC (collectively the "Parties") reached a settlement in this case.

**WHEREAS,** on April 25, 2021, Plaintiff provided the U.S. Department of Justice, Environment and Natural Resources Division ("DOJ") a copy of the Parties' executed settlement agreement to initiate the 45-day review period.

**WHEREAS,** on April 29, 2021, DOJ emailed an acknowledgment that the settlement agreement had been received on April 26, 2021 and that their review period and comment period would end on June 10, 2021. The same email communication instructed that a letter from the SEP recipient needed to be submitted by the Parties by June 1, 2021.

**WHEREAS**, on June 9, 2021, Sarasota Bay Estuary Program notified Plaintiff it declined to be the SEP recipient.

**NOW THEREFORE**, the Parties agree to meet and confer in good faith for a period of 45 days to agree upon an alternative SEP recipient, which recipient in no event shall include Plaintiff, Plaintiff's Counsel, nor any entity under their respective control.

Plaintiff shall provide DOJ with copy of this Addendum within five (5) days of execution, and shall provide DOJ confirmation from the ultimate SEP recipient, within forty-five (45) days.

Date: June 16, 2021                          AQUA TERRA AERIS LAW GROUP


                                             Jason R. Flanders
                                             Counsel for Plaintiff, Suncoast
                                             Waterkeeper


Date: 6/17/21                                LEWIS LONGMAN WALKER


                                             Kevin Hennessy
                                             Counsel for Defendants, Suncoast
                                             Metals, LLC and Paradise Properties
                                             of Longboard Key, LLC